**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| ACXIOM CORPORATION | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| V. | * | |
| | * | NO:  4:12CV00165 SWW |
| MICHAEL BRIGGS and | * | |
| MICHAEL COOL | * | |
| | * | |
| Defendants | | |

**ORDER**

Acxiom Corporation ("Acxiom") filed this contract action against Michael Briggs ("Briggs") and Michael Cool ("Cool") in state court, and Defendants removed the case, asserting subject matter jurisdiction on the basis of complete diversity between the parties and an amount in controversy exceeding $75,000.  Before the Court is Defendants' motion to dismiss for lack of personal jurisdiction, motion to stay or dismiss based on the existence of parallel litigation in an Ohio state court, and motion to transfer the case to the Northern District of Ohio (docket entries #6, #7).  Acxiom filed a response in opposition (docket entry #16), Defendants filed a reply (docket entry #17), Acxiom filed a sur-reply (docket entry #19), and Defendants filed a supplemental reply (docket entry #23, Ex. A).  After careful consideration, and for reasons that follow, the Court finds that Acxiom has failed to carry its *prima facie* burden to show personal jurisdiction over Defendants and therefore dismisses the action without prejudice.

**I.  Background**

The following information is taken from the amended complaint.  Acxiom is a Delaware corporation with a principal place of business in Little Rock, Arkansas.  Defendants Briggs and Cool reside in Ohio, and Acxiom employed Briggs and Cool to work at the company's

subsidiary, Acxiom Information Security Service, Inc. ("AISS"), which is located in Ohio.

During their employment with Acxiom, Defendants entered restricted stock unit agreements ("RSU Agreements") with Acxiom. *See* docket entry #18, Ex. #8. Each RSU awarded under the Agreements carries the right to receive one share of Acxiom common stock upon vesting. The RSU Agreements provide that if Defendants commit certain prohibited activities during or within one year after termination of their employment, they will forfeit any shares issued to them within the three year periods before and after the termination of their employment with Acxiom or an Acxiom subsidiary. The prohibited activities listed in the RSU Agreements include accepting employment with anyone that is in competition with Acxiom. The RSU Agreements further provide that Defendants shall pay Acxiom the sale proceeds or fair market value of forfeited shares.

In 2011, Acxiom anticipated selling AISS to Sterling Infosystems, Inc. ("Sterling"). In exchange for Defendants' support and assistance throughout the sale and integration process, the parties negotiated and entered confidential bonus agreements ("Bonus Agreements"), which generally provided that Defendants would receive bonuses after the sale on the condition that they remained employed by AISS or Sterling up to and including six months after the sale.

According to the complaint allegations, Defendants voluntarily resigned from AISS on December 4, 2011, two months before Sterling purchased AISS from Acxiom. By letter dated December 8, 2011, Acxiom reminded Defendants of the forfeiture provision contained in the RSU Agreements. However, after terminating their employment with Acxiom, Defendants accepted employment with First Advantage, a Florida company that competes with Acxiom.

On February 9, 2012, Acxiom filed this lawsuit in the Circuit Court of Pulaski County, Arkansas. Acxiom's first amended complaint sets forth two claims. Under Count I, Acxiom sues for breach of the RSU Agreements and seeks payment for the value of forfeited shares

issued to Briggs and Cool. Under Count II, Acxiom seeks a declaratory judgment that it owes nothing under the Bonus Agreements.

On March 13, 2012, Defendants removed the case to federal court, asserting federal jurisdiction on the basis of diversity of citizenship between the parties and an amount in controversy exceeding $75,000.

On February 6, 2012, Briggs, Cool, and First Advantage filed a complaint for declaratory relief in Cuyahoga County, Ohio, naming Acxiom and Sterling as defendants. By way of relief in the Ohio litigation, the plaintiffs seek a declaration that the aforementioned RSU Agreements are overbroad and unenforceable. *See* docket entry #6, Ex. #1. The Ohio litigation also involves a dispute over Associate Agreements that Briggs and Cool entered with Acxiom.[1] The Associate Agreements provided that Acxiom would employ Briggs and Cool as associates on certain terms and conditions, including terms set forth in a non-compete clause. *See id.* Plaintiffs in the Ohio proceeding seek a declaratory judgment that the non-compete clauses are overbroad and unenforceable.

Defendants moved for dismissal in this case, asserting that Acxiom cannot establish personal jurisdiction over Cool or Briggs in Arkansas and that the case should be dismissed or stayed, based on the existence of parallel litigation in Ohio state court. Alternatively, Defendants ask the Court to transfer this case to the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a). Likewise, Acxiom moved for dismissal, stay, or severance in the Ohio litigation, and

---

[1] An assignment and assumption agreement dated February 1, 2012, between Axciom and AISS, purports to assign AISS all of Acxiom's rights under the Associate Agreements. *See* docket entry #6, Ex. #2. According to the assignment and assumption agreement, Acxiom made the assignment in order to satisfy its obligations under a purchase agreement dated December 2, 2011, whereby Acxiom agreed to sell Sterling 100% of the capital stock of AISS. Apparently, Acxiom remains a party to the RSU and Bonus Agreements.

the Ohio state court denied that motion. *See* docket entry #25, Ex. #2. Subsequently, Acxiom filed an answer and a counterclaim against Briggs and Cool in the Ohio litigation. *See* docket entry #25, Ex. #3. In its counterclaim, Acxiom seeks damages for breach of the RSU Agreements.

## II. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that personal jurisdiction exists, which is accomplished by pleading facts sufficient to show that the defendants can be subject to jurisdiction within the state.[2] See *K-V Pharmaceutical Co. v. J. Uriach & CIA, S.A.,* 648 F.3d 588, 591(8th Cir. 2011)(citations omitted). Such a *prima facie* showing "must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir.2004).

Although the plaintiff bears the ultimate burden of proof, personal jurisdiction over the defendant need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing. *See Dakota Industries, Inc. v. Dakota Sportswear, Inc.* 946 F.2d 1384, 1387 (8th Cir. 1991)(citing *Cutco Ind. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986)). "If the district court does not hold a hearing and instead relies on pleadings and affidavits, . . . the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party." *Id*. (citations omitted).

A federal court sitting in a diversity action may assume jurisdiction over a nonresident

---

[2] The First Amended Complaint contains no specific allegations regarding Defendants' activities directed toward Arkansas. The pleading simply states: "This Court has personal jurisdiction over the parties. Arkansas Code Annotated § 16-4-101 and 16-111-101 et seq." Docket entry #3, ¶ 5. Arkansas Code § 16-4-101(B) provides that the courts of Arkansas shall have personal jurisdiction over all persons to the maximum extent permitted by the Due Process Clause of the United States Constitution. Arkansas Code § 16-111-101 sets forth a definition of the term "person."

defendant to the extent permitted by the long arm statute of the forum state. Arkansas's long-arm statute permits the assertion of jurisdiction to the fullest extent allowed by the Fourteenth Amendment's Due Process Clause, which permits the exercise of personal jurisdiction over a nonresident defendant that has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945)(quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

The Supreme Court has identified two types of personal jurisdiction: general and specific. General personal jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out those contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16, 104 S.Ct. 1868 (1984). Specific personal jurisdiction, in contrast, exists only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state. *Id*. at 414, 104 S.Ct. 1868.

Five factors should be considered when determining the sufficiency of a defendant's contacts with the forum state: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest in the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d. 519, 522-23 (8th Cir. 1996). The first three factors are closely related and are of primary importance, while the last two are secondary. *See id*. at 523. Additionally, for obvious reasons, the third factor is relevant only to specific jurisdiction inquiries.

Acxiom contends that its contract claims arise out of Defendants' employment with Acxiom and their contacts with Arkansas, which include the following:

- During Briggs's and Cool's employment with AISS in Ohio, they reported to and were supervised by Acxiom corporate leadership in Arkansas, and they were present in Arkansas on several occasions.

- During the last years of their employment with Acxiom, Briggs and Cool visited Arkansas, where they attended corporate and business unit meetings and visited clients. *See* Murdoch Aff., docket entry #16, Ex. C.

- Briggs and Cool entered at least three separate contracts with Acxiom regarding their employment, including the aforementioned Associate Agreements and the Bonus and RSU Agreements at issue in this case.

As a threshold matter, the Court finds no evidence to support the exercise personal jurisdiction under a general jurisdiction theory. The assertion of general jurisdiction depends on affiliations with the forum that are "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* — U.S. —, 131 S. Ct. 2846, 2851 (2011)(citing *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 317, 66 S. Ct. 154, 159 (1945)). Throughout their employment with Acxiom, Defendants lived in Ohio, and although their work involved travel, they were stationed in and worked from Ohio. *See* docket entry #6, Exs. #8 (Briggs and Cool Affs.). Defendants' employment required that they report to supervisors in Arkansas and travel to Arkansas to attend corporate meetings, but those contacts are simply insufficient to warrant the exercise of personal jurisdiction in a cause of action unrelated to those contacts. Accordingly, the Court finds that this case involves only a question of specific jurisdiction.

"Specific jurisdiction may be established where the claim 'arises out of' or 'relates to' a defendant's contacts with the forum." *Pangaea, Inc. v. Flying Burrito LLC,* 647 F.3d 741, 746 (8th Cir. 2011)(citing *J. McIntyre Mach., Ltd. v. Nicastro*, — U.S. —, 131 S.Ct. 2780, 2787-88 (2011)(plurality opinion)). The question is whether Acxiom's specific contract claims arise out of or relate to Defendants' contacts with the forum state.

The Supreme Court has held that an individual's contract with an out-of-state party, standing alone, is insufficient to establish sufficient minimum contacts in the other party's home forum to support personal jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S. Ct. 2174, 2184-85 (1985). Instead, the Court has "emphasized the need for a 'highly realistic' approach that recognizes that a 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.'" *Id*. (citing *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316-317, 63 S.Ct. 602, 604-605 (1943)). In a contract case, in determining whether a defendant purposefully established minimum contacts with the forum state, pertinent factors include the parties' prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealings. *See Burger King*, 471 U.S. 462 at 479, 105 S.Ct. 2174.

Briggs and Cool testify by affidavit that they did not negotiate the terms of the RSU Agreements, and negotiations for the Bonus Agreements were conducted through email messages and telephone calls. *See* docket entry #6, Exs. #8, #9. Defendants' communications directed to Arkansas via email and telephone do not alone satisfy due process requirements, but they count toward minimum contacts that support personal jurisdiction. *See Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1388 (8th Cir. 1995).

The RSU Agreements require that Defendants sign stock award notices and return them to Axciom in Arkansas and pay Acxiom in the event of forfeiture. However, the Court finds no contract terms that would require Defendants to engage in substantial activity in Arkansas. Although Defendants made several in-person visits to Arkansas during their employment with Acxiom, the Court finds no evidence that those visits were connected to the negotiation or performance of the RSU and Bonus Agreements.

Acxiom asserts that the purpose of the RSU and Bonus Agreements was to "reward good Acxiom employees and encourage future performance in Defendants' work for Acxiom." Docket entry #16 at 11. But neither Agreement requires that Defendants remain employed by Acxiom, and the Bonus Agreements refer to Defendants' "at will" employment status.[3] Acxiom emphasizes that the compensation agreements between the parties gave Defendants a proprietary interest in Acxiom. However, ownership of shares in a corporation located in a particular forum is not purposeful availment of that forum. *See Shaffer v. Heitner*, 433 U.S. 186, 216, 97 S.Ct. 2569 (1977).

The Bonus Agreements contain an Arkansas choice of law provision, but the RSU Agreements provide that Delaware law shall govern. Because the contracts at issue lack a substantial connection with the forum state, the Court finds that the Arkansas choice of law provision included in the RSU Agreements fails to tip the scales in favor of personal jurisdiction.[4] *See Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 313 (8th Cir. 1982)(holding that phone and facsimile communications to the forum, purchase orders and payments sent to the forum, a choice of law clause within the contract regarding the forum state, and delivery of the product within the forum state were not enough to satisfy minimum contacts).

Viewing the facts in a light most favorable to Acxiom, the Court finds that Defendants have insufficient contacts with Arkansas to confer personal jurisdiction over them with respect to

---

[3] Additionally, Acxiom provides a copy of the company's Equity Compensation Plan, which provides: "The Plan will not confer upon any Participant any right with respect to continuance of employment . . . nor will it interfere in any way with any right the Company . . . would otherwise have to terminate a Participant's employment or other service at any time." Docket entry #18, Ex. #4.

[4] Acxiom contends that *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 594 (8th Cir. 2011) requires a finding of personal jurisdiction in this case. However, in *K-V Pharm*, the contract at issue required the defendant to engage in substantial activity in the forum state and perform delivery terms within the forum, and the defendant visited the forum state to re-negotiate the contract. The Court finds no similar evidence in this case.

the subject of this lawsuit: the RSU and Bonus Agreements. Accordingly, the motion to dismiss for lack of personal jurisdiction will be granted.

The Court's ruling regarding personal jurisdiction renders moot Defendants' motions to stay, dismiss, or transfer this case. However, the Court finds it necessary to address Defendants' assertion that venue is improper in this district. The general venue statute, 28 U.S.C. § 1391, does not apply to a case that has been removed to federal court. *See Polizzi v. Cowles Magazines, Inc*., 345 U.S. 663, 665, 73 S.Ct. 900 (1953). Instead, the venue of a removed action is governed by 28 U.S.C. § 1441(a), which authorizes removal to the district court for the district and division embracing the place where the state court action is pending. Under § 1441(a), venue is proper in this district and division.

### III.

For the reasons stated, Defendants' motion to dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure is GRANTED. Pursuant to the judgment entered together with this order, this action is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED THIS 18TH DAY OF OCTOBER, 2012.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE